## ANNAPOLIS GAS AND ELECTRIC LIGHT COMPANY *vs.* OSCAR FREDERICKS.

*Injury from Electric Wire Strung on Bridge—Evidence—Instructions to the Jury—Walking on Driveway—Medical Expert.*

When it is alleged that a person was injured by the defective condition of an electric light wire at a certain time and place, evidence is not admissible to show the condition of the wire at that place on the following day.

Defendant's electric wire was strung along the side of a public bridge and over the water, at a distance of nine feet five inches from the floor of the bridge. Plaintiff's evidence was that while he was standing on that side of the bridge by the rail, the footway being on the other side, his hat was blown off and in reaching for it he touched the live electric wire. In an action against the electric company, *held,* that a prayer offered by the plaintiff is erroneous which does not require

the jury to find whether the wire was sagging at the time and place of the accident, so as to be dangerous to persons using the bridge with due care, and that the defendant knew, or, by the exercise of ordinary diligence, could have known, that the wire was so sagging, and that the wire was originally constructed in a proper manner at the place.

*Held,* further, that the plaintiff was not guilty of contributory negligence as matter of law. .

In an action to recover damages for an injury caused by an electric wire, a prayer which states in abstract terms the duty of persons using dangerous agencies on a highway, without making any reference to the particular facts in evidence, is held in this case to be general and misleading.

A pedestrian who uses the driveway of a bridge instead of the footway is not a trespasser.

A graduate of a reputable medical school who has practiced medicine for five years is qualified to testify as a medical expert.

*Decided January 27th, 1909.*

Appeal from the Circuit Court for Anne Arundel County (FORSYTHE, J.), where there was a judgment on verdict for the plaintiff for $500.

*Defendant's ½ Prayer.*—That there is no evidence in this case legally sufficient to entitle the plaintiff to recover and the verdict must be for the defendant. (*Refused.*)

*Defendant's 1st Prayer.*—If the jury find that the plaintiff was damaged as alleged in the declaration and that said damage was caused by want of ordinary care on the part of the plaintiff, then he is not entitled to recover, although the jury may find that the wires of the defendant company at the time of said damage were out of repair. (*Rejected.*)

*Defendant's 2nd Prayer.*—The jury is instructed that the uncontradicted facts in the case show that the plaintiff directly contributed to his own injury and the verdict must be for the defendant. (*Rejected.*)

*Defendant's 3rd Prayer.*—If the jury shall believe from the evidence that the plaintiff, by the exercise of due caution and care, could have avoided the accident complained of, by such exercise of ordinary care and caution, and if they shall find that the plaintiff was guilty of contributory negligence in not exercising due care and caution, then their verdict must be for the defendant. (*Granted.*)

*Defendant's 4th Prayer.*—That in order to enable the plaintiff to recover in this action, the conduct of the defendant or its agents must be shown to be grossly careless and that the exercise of the proper and reasonable caution and prudence on the part of the plaintiff would not have prevented him from injury, and that the burden of proving such negligence is on the plaintiff. (*Granted.*)

*Defendant's 4½ Prayer.*—That if the jury shall find from the evidence that the accident in question could have been avoided by the exercise of ordinary care and caution on the part of the plaintiff, he is not entitled to recover. (*Rejected.*)

*Defendant's 5th Prayer.*—That if the jury find from the evidence that the injury complained of would not have occurred if the plaintiff, in crossing the said bridge, had not gone on the driveway, but that he could have crossed said bridge in safety by taking the way provided for pedestrians, that the accident would not have occurred, and if they shall so find. they shall find that he was a trespasser upon the driveway, and that then he is not entitled to recover in this case. (*Rejected.*)

*Defendant's 6th Prayer.*—If the jury find that the plaintiff was trespassing on the right of way not intended for pedestrians, their verdict shall be for the defendant. (*Rejected.*)

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke, Worthington, Thomas and Henry, JJ.

*James W. Owens* and *Joseph C. France,* for the appellant.

*James M. Munroe* (with whom was *Robert Moss* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The appellee brought suit against the appellant company in the Circuit Court for Anne Arundel County to recover damages for an injury sustained, alleged to have been caused by contact with an electric wire charged with electricity, maintained and operated upon a public bridge connecting the City of Annapolis and the village of Eastport.

The declaration charges that the bridge is a public highway and the wires are hung and suspended over and upon poles controlled by the defendant upon the streets of the city and village and upon the bridge for the purpose of doing a general electric light business in the City of Annapolis and the village of Eastport. That the wires were permitted to become and be without proper insulation, and by reason thereof contact with the wires was dangerous to life, and the defendant while lawfully using and passing over the bridge without any negligence on his part came in contact with the wires and was injured.

The record contains four bills of exceptions. Three relate to the admissibility of evidence and the fourth as to the rulings of the Court on the prayers. The verdict and judgment were in favor of the plaintiff and the defendant has appealed.

The first exception was taken to the ruling of the Court in allowing the plaintiff to testify as to the condition of the wires subsequent to the injury. The plaintiff was asked the following question:

"Did you make any examination of the wires at the place where you were injured after the injury; if so, how soon after?

"A. I went there early the next morning to see the condition of the wires at the place where I was shocked and burned.

"Q. What did you find to be the condition of the wires?

"A. I examined the wires early next morning at the place

where I was burned and found the wires in very bad condition and uninsulated and also sagging down from a foot to eighteen inches."

The general rule is well settled that evidence of the subsequent condition of the place where the accident occurs is not admissible to show a negligent condition at the time of the injury, because the question of negligence is to be determined by the actual condition at the time of the injury. There are certain well-recognized qualifications and exceptions to this rule, but as the facts of this case do not bring it within any of those exceptions, they need not be discussed here.

There was no evidence upon the part of the plaintiff or the other witnesses to the effect that the insulation of the wires was defective or that they sagged down from a foot to eighteen inches at the time of the alleged injury at the point or place where the accident is alleged to have happened. In the case of *Electric Light Co.* v. *Lusby,* 100 Md. 650, it was said it was error to admit this character of testimony, because the effect of the testimony as introduced was to show that the insulation of certain of the defendants' wires was defective at other points and on other occasions than at the piont of contact where the accident happened. The testimony therefore was too remote and misleading and presented an issue of negligence not involved in the case. *Ziehm* v. *United Electric Co.,* 104 Md. 52.

In this case, the wire was not on or over the highway, but was strung along the south side of the bridge over the water and at a distance of nine feet and five inches from the floor of the bridge. The evidence tended to show that the wire as originally constructed was properly placed and located as to the safety of the public, because it was beyond the reach of those properly using the bridge. The plaintiff testified that on the night of August 8th, 1907, he went down on the bridge to get the air. While there he was attracted by the sound of a graphaphone and went to the south side of the bridge, and while standing on the floor of the bridge, leaning on the rail, between the second and third truss of the bridge from the

Eastport side, "a puff of wind blew my hat off, and I grabbed for it and grabbed a live electric wire."

It was clearly incumbent upon the plaintiff to show, by competent evidence, that the wire sagged or slacked at the time of the accident and at the point where he was injured—that is, between the trusses where he was standing on the bridge—otherwise there could be no recovery in the case. The condition of the wire on the day after the accident, under the facts of this case, was not legally sufficient proof of its location and condition at the time and at the point or place of the injury. There was error in the ruling upon this exception.

The second and third exceptions are practically the same, and relate to the admission of the testimony cf Dr. L. B. Henkel, who testified as a medical expert. There was no error in the rulings set out in these exceptions, and we do not understand they are seriously pressed by the appellant. Dr. Henkel testified that he was a graduate of the Maryland University School of Medicine and had practiced medicine for five years. A sufficient foundation was laid for the introduction of his testimony and the objections raised on those exceptions were properly overruled.

The fourth exception embraces the rulings cf the Court upon the prayers.

The plaintiff's first and second prayers were clearly erroneous and should have been rejected.

The vice of the first prayer consisted in the omission to leave to the jury to find whether the wire was sagging at the time of the injury at or near the place where the accident occurred, so as to be dangerous to persons, using due care, while lawfully using the bridge, and that the defendant had knowledge or could have, by the exercise of ordinary diligence, ascertained that the wire was so sagging as to be dangerous, provided they found the wire was originally constructed in a proper manner at the place of the accident.

The second prayer asserted an abstract proposition of law, and was as follows: That the degree of care required by the

law of individuals or corporations using dangerous agencies
in the prosecution of their business on the public highways
is proportionate to the danger involved in the use of such
agency, and that the greater the danger involved to persons
lawfully using said highways with due care, the greater the
degree of care required in the use of such dangerous agen-
cies, to prevent injury to persons so lawfully using the high-
way.   This prayer was manifestly too general and misleading
under the facts of this case, and should have been rejected.
*McDonald* v. *Moore,* 68 Md. 336; *Md. Central R. Co.* v. *Neu-
beur,* 62 Md. 402.

We find no error in the ruling of the Court upon the pray-
ers submitted on the part of the defendant. They will be set
out in the report of the case, and need not be fully discussed
here.   The defendant's third and fourth prayers were grant-
ed, so the exception on this branch of the case relates to the
rejection of the defendant's prayers number one-half, one,
two, four and one-half, five and six.

The prayer marked one-half was a demurrer to the evidence
and was properly rejected.   The first, second and four and
half prayers submitted the question of contributory negli-
gence on the part of the plaintiff, and was covered by the
defendant's third and fourth prayers, which were granted.
The fifth and sixth prayers asserted a proposition of law as to
trespassing upon the driveway of the bridge not applicable to
the facts of the case, and were properly rejected.

The facts disclosed by the record in this case clearly dis-
tinguish it in principle from the case of *W. U. Tel. Co.* v.
*State, use of Nelson,* 82 Md. 311, relied on by the appellee.
In *Nelson's Case* the telephone wire had been hanging over
the feed wire for at least two weeks, and the Court very prop-
erly said under the facts of the case: "The privileges so grant-
ed, thus to encumber the public highway with appliances so
likely to become dangerous to the public safety unless prop-
erly employed and controlled, imposed upon them, and each
of them, the duty of so managing their affairs as not to in-
jure persons lawfully on the streets.   They owed to Nelson

that his lawful use of the street should be substantially as safe as it was before the telegraph and railway plants had so occupied it. It was their plain duty not only to properly erect their plants, but to maintain them in such condition as not to endanger the public."

In the case at bar the wires were strung along the south side of the bridge, and not on or over the highway. As originally strung, they appear to have been properly located as to the safety of the public properly using the bridge. They were also strung where the accident happened on the driveway of the bridge, and not on the walk-side prepared for pedestrians.

It follows, the judgment will be reversed because of the errors indicated and a new trial will be awarded.

> *Judgment reversed and a new trial awarded, with costs.*