# DAVID M. MEHRING *v.* PENNSYLVANIA RAILROAD.

[No. 66, October Term, 1929.]

*Decided January 15th, 1930.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Diggus, and Parke, JJ.

*Guy W. Steele,* for the appellant.

*James E. Boylan, Jr.,* with whom were *Milton G. Urner, Jr.,* and *James A. C. Bond* on the brief, for the appellee.

Adkins, J., delivered the opinion of the Court.

At Kingsdale Station in the State of Pennsylvania, on the morning of November 23rd, 1927, in broad daylight, David M. Mehring, plaintiff and appellant, drove his Ford truck on the track of the defendant in front of a train which he saw approaching at the distance of about 225 feet, and, according to his testimony, coming at full speed. He had been familiar with this crossing for many years and drove over it frequently. According to plaintiff's testimony no warning of the approach of the train was given by either whistle or bell.

Plaintiff had his truck in low gear, was going up-grade, and was driving at the rate of four miles an hour. The truck was in good condition and the brakes in good working order. At this crossing the tracks are about nine feet above the general level of the county road and the approach from the level to the track is about fifty feet up-grade. At the foot of this grade, fifty feet from the track, plaintiff stopped his truck, got out on the running board and looked and listened for a train, but he neither heard nor saw anything. At that point he had at most a view of 400 feet. He then proceeded toward the crossing, continuing to look and listen, according to his testimony, but his view was obstructed by trees and buildings until the front wheels of the truck were within a

foot or two of the rail, when he first saw the approching train at the distance above mentioned. In the meantime he had not stopped again. Instead of stopping and backing when he saw the train, he tried to get across, and the rear of his truck was struck. The truck was wrecked and he was injured, and he sued the defendant. This appeal is from a judgment in favor of defendant on a directed verdict.

There are two exceptions in the record; one to the disallowance of the following question asked one of the plaintiff's witnesses: "Do you know whereabouts the public in traveling this mill road stop as they approach the railroad going from east to west?"; and the other to the refusal of plaintiff's prayers and the granting of defendant's demurrer prayer. We find no error in either of these rulings. The answer expected to the disallowed question was that the usual place for stopping was at the foot of the grade where plaintiff stopped. The answer could have availed plaintiff nothing. It is perfectly obvious that to stop at a place fifty feet from the crossing, where the view up the track was limited to 400 feet, when the greatest speed plaintiff could make going up that grade in low gear was four miles an hour, even if it were the place where people were accustomed to stop, was not a compliance with the law that one approaching a railroad crossing where the view is obstructed must stop, look, and listen at a place where an approaching train can be seen or heard far enough away to prevent a collision.

The directed verdict on the ground of contributory negligence would have been proper under our decisions on the other facts of this case, even if plaintiff had not seen the train before he attempted to cross, because, according to his own testimony, if he had stopped his truck a few feet from the track and walked ahead, he would have had an unobstructed view up the track for several thousand feet, and could have avoided the accident. *Manfuso v. Western Md. Ry. Co.,* 102 Md. 257; *Annapolis, W. & B. R. Co. v. State, use of Hickox,* 104 Md. 659; *Brehm v. Phila., B. & W. R. Co.,* 114 Md. 302; *Glick v. Cumberland & Westernport Elec. Ry. Co.,* 124 Md. 308; *O'Meary v. Balto. & B. Elec. Co.,* 133 Md. 503; *Siejak*

*v. United Rys. & Elec. Co.,* 135 Md. 367; *Gerlach v. Cumberland & Westernport Elec. Ry. Co.,* 142 Md. 638; *Balto. & O. R. Co. v. Newton,* 137 Md. 21; *Morrow v. Wash., B. & A. Ry. Co.,* 145 Md. 285; *Taylor v. Western Md. Ry. Co.,* 157 Md. 630; *New York Central & H. R. R. Co. v. Maidment,* 168 Fed. 21, 21 L. R. A. (N. S.) 794; *Goodwin's Case,* 275 U. S. 66.

If, when plaintiff saw the train at a distance of 225 feet, he could have avoided the accident by stopping and backing, this case then is within the decision of *McNabb v. United Rwys. Co.,* 94 Md. 724, and the previous discussion is unnecessary. In that case this court said it was the duty of plaintiff to back instead of going forward when she saw a car approaching at a distance of forty feet. But it is suggested that, as the accident happened in the State of Pennsylvania, the law of that state should control, and appellant cites several Pennsylvania cases where, on the facts of those cases, the court held that when a driver has made due observation at the usual point from which a view of the tracks may be had, it is usually for the jury to say whether he was under the duty to again halt before entering upon the crossing. But in those cases the drivers stopped at or very near the tracks and not at such a distance as to give no real assurance.

It is not necessary to decide whether the law of Pennsylvania applies in this case. Because on the facts of this case the law is the same there as here. The Pennsylvania rule applicable to this case is stated in *Brenner v. Philadelphia & Reading Ry. Co.,* 262 Pa. 307: "When a driver stops at a point where an obstruction prevents a proper view of the railroad he is about to cross, he must descend from his vehicle, and, if necessary, walk to a point where the prospect is clear."

In *Keenan's* Case, 202 Pa. 107, the court, in speaking of the contributory negligence of the plaintiff in walking his horse across the track without again looking, after having looked at a point thirty-five feet from the track, said: "But

his misfortune is that he was careful but for an instant, when he should have continued to be watchful until the track, the real point of danger, was reached."

In *Bistider v. Lehigh Valley R. Co.*, 224 Pa. 615, the court said: "Stopping where he could not see was little better than not stopping at all, and it was not an observance of the duty the law imposes." See also, to same effect, *Mankewicz v. Lehigh Valley R. Co.*, 214 Pa. 386.

In *Kinter v. Pennsylvania R. Co.*, 204 Pa. 497, the court said: "Where there is a doubt as to the proper place to stop, look and listen, as a general rule such question will be referred to the jury. But where there is no such doubt—when the deceased stopped at a point where he could not see—it is for the court to determine whether it was a proper place."

Appellant also invokes the doctrine of the last clear chance as an objection to the withdrawal of the case from the jury. But that doctrine has no application to the facts of this case. There is no evidence that any of the trainmen could have averted the accident after they could by the exercise of reasonable care have discovered the peril of the plaintiff. *Gerlach v. Cumberland & Westernport Elec. Ry. Co., supra, Morrow v. Wash., B. & A. Ry. Co., supra; Taylor v. Western Md. Ry. Co., supra.*

*Judgment affirmed, with costs to appellee.*